The District Court clearly erred in concluding that the government had met its burden to invoke the inevitable discovery doctrine, and that's true for two primary reasons. In order to show that the evidence from Mr. Jones's car would have inevitably been discovered, the government had to prove two things by a preponderance of the evidence through non-speculative evidence. First, it had to show that the asserted inevitable factor, Sergeant Bachman, went to the Circle K for reasons that were unconnected to the illegal search, that he was unaware of the search. Then, it also had to show that Mr. Jones, but for that unlawful search, would still have been at the Circle K to be discovered by Sergeant Bachman when he went there. I want to initially point out to Your Honors that the District Court made no finding on the second of those questions. The District Court didn't address whether Mr. Jones would still have been at the Circle K. That's probably because you didn't make that argument in the District Court, right? I think that's incorrect, Your Honor. I think, actually, in the District Court, it was repeatedly argued by Mr. Jones that the search was unreasonably prolonged and that it should have ended after the pat-down search that produced no evidence of wrongdoing. But was that connected to the idea that there was not inevitable discovery because he wouldn't have still been there? Well, I think it was, Your Honor. I think it may not have been phrased in the exact same way that I phrased it on appeal, perhaps, but Mr. Jones argued that the government had not shown inevitable discovery and that the search should have ended after the pat-down. I can point, Your Honors, to the places in the record where that was argued, actually. In fact, Mr. Jones made this argument in his initial motion to suppress on ER 257 to 258. 257 at line 23, Mr. Jones's actions and demeanor during Deputy Peters' encounter with him did not rise to the level of establishing reasonable suspicion, let alone probable cause. Her determination should have ended her encounter with Mr. Jones. And then on the next page, 258, line 3, Deputy Peters did not find anything after completing the pat-down search. Her encounter should not have gone any further. This was even before the government raised inevitable discovery in its opposition to the motion to suppress. What I'm struggling with here is the government clearly has to show that Jones would have been there when Bauchman arrived. Correct. So then you have this gap, and I think they argue nine different things about why he could have been detained. You know, the idea that he was under the influence of something, she could have done a breathalyzer test, etc. She didn't do those things. And so I guess my question is, what's the standard of review here as far as what the government has to show? Do they have to show that this was a possibility she could have done it, or that she did do it, or what do you have to show? Your Honor, the government has to show more than a possibility. I refer, Your Honors, to the Ramirez-Sandoval and Manzo-Girardo cases. In Ramirez-Sandoval, the argument of the government was that the officer had opened the van and had done an illegal search. But it said, but for that illegal search, he still could have questioned the occupants of the van. He was standing right there. He could have questioned them and found out the same information that they were in the country illegally that he discovered by reaching into the van. But the court said that's not good enough. If it was equally plausible that he would and he wouldn't have taken the action, that's not sufficient. The government has to show through nonspeculative evidence, on a preponderance of the evidence, that this would have happened. The government would have done this. I'd also like to- So in order to satisfy that standard, they're basically to have to have done it. No, I don't- Is that correct, or- I don't think that's it, Your Honor. I don't think it's that high of a burden. I think that Officer Peters maybe would have had to testify that, you know, if I hadn't done the search, I was still intending to check further into his name. Or I would have, you know, because I thought he was under the influence, I would have done a breathalyzer. She didn't say any of those things. In fact, she said the opposite. She said she never asked him about a handicapped placard. She, it's clear from the record, not only that she, not only, I guess, is what I'm saying more precisely, Your Honor, not only is there an absence of evidence that she would have taken these actions, there's affirmative evidence that she had no intention of taking the actions that the government now says she could have- Because of what she said? Correct. Because of what she testified to at the motion to suppress hearing. If we agree with you, would we send this back for, vacate it and remand for additional fact-finding, or is the suppression motion granted? Is that what you're looking for? Your Honors, I don't, I think that that's an option for Your Honors to do, but I think that actually there's not really a reason to do that here. The issue of whether the search was prolonged was presented below. The government had a hearing below. It presented a declaration from Bachman and Peters. It had an opportunity to present those witnesses. It presented Peters. She was questioned about the handicapped placard. She said, I didn't ask him. She testified her inquiry into his name. I asked his name. He gave me a name. She entered it into her computer. I think the record actually establishes that she was not intending to take these other actions. I also think it's somewhat telling that the government below said no hearing was needed. In its opposition to the motion to suppress, it said no hearings needed. It asserted inevitable discovery on three grounds, all of which depended on the presence of Sergeant Bachman at the scene. It asserted that inevitable discovery could have happened because of a parole search, an inventory search, and a search incident to arrest, all depending on the arrival of Bachman. It made no claim that Peters intended to take any other action that would have produced this information. How much time took place between when you think Sergeant or Officer Peters should have let your client go and Sergeant Bachman arriving on the scene? That's approximately eight minutes, and I'm basing that on the government's call log that they produced in evidence. It's at ER 244. I think there are actually two things about this call log that really bear on this inquiry and show that, I think they at least suggest that Officer Bachman did know that a search was occurring. As I pointed out in my brief, there's an eight minute gap between the pat down, which produced no evidence of wrongdoing, and the arrival of Bachman. If you look on ER 244, you'll also see that before Bachman arrives, it shows at 433, there's opera names B and then a redaction, E, Bachman, Edward, at 433. Well, five minutes before that, at 428, there's a notation about a gun. Neg gun return, I don't know exactly what this means because there wasn't any information put into the record below about it by the government. But it certainly suggests, Your Honors, that there was some inquiry into a gun that happened five minutes before Bachman arrived. Sergeant Bachman, in his declaration, notably does not say he was unaware that a search was occurring or would occur or had occurred. He doesn't say that. All he says is he was unaware that a gun had been found. That's all we have. We have no statement from the government as to whether Bachman knew or didn't know about the search. We have an absence of evidence. But the two dispatch entries mention a gun prior to his getting there. And you're suggesting that he must have known that there was a gun and therefore the search had already occurred? Your Honor, I'm not saying he must have known. I'm saying the government had a burden to show that he didn't know. And not only does the evidence not show that, the evidence from the government, if anything, what we do have, suggests or indicates that he may have known. It suggests that he did know of this. Whereas, and even if we had no evidence either way, that would be insufficient. But I'm saying that what evidence we do have points against the inevitable discovery doctrine. Certainly, the government has not met its burden. And certainly, I think the district court was in clear error in finding that the evidence had met that burden. Given this absence of evidence, given that also the district court apparently misread Sergeant Bachman's declaration to say something that it actually didn't say. Do you want to save any of your time, counsel? It's up to you. Yes, I do, Your Honor. Thank you very much. I'll reserve the rest of my time. Very well. We'll hear from the government. Good morning, Your Honors. May it please the court, Bram Alden for the United States. I want to start with the court's question about the Guerrero case that the court asked the parties to discuss today. And that case holds that a new theory of suppression raised on appeal is waived under Rule 12. I think that case does apply here. The arguments that defense counsel is making about the inevitable discovery doctrine were not arguments that were raised below. The defendant, in response to the government's argument about the inevitable discovery doctrine below, argued only that Deputy Peters did not know about the fact that the defendant was on parole at the time she conducted the search. That had nothing to do with Sergeant Bachman. And so the new arguments the defendant is making on appeal are an entirely new theory that should be deemed waived under Guerrero. Does it matter that it's a defense, really, too? I mean, it's a few steps away from the normal thing of justice suppression theory, right? And I thought about that, Your Honor. But in fact, every time the defense makes a suppression motion, it is the government's burden to prove in Guerrero that there was reasonable suspicion for the stop. And in any other case, that there was probable cause to conduct a warrantless search as here. So I don't think that should change the calculus. Really, what I think Guerrero is motivated by is the notion that these sorts of factual disputes need to be litigated below if the defendant wants to prevail in showing clear error on appeal. And I think that's also consistent here with the terms of the defendant's conditional plea agreement. That agreement specifically preserved the right for him to appeal from the adverse determination of his motion, not from a non-existent determination based on a claim he never raised. So I do think it's appropriate to apply that same standard. But even if not, the standard would be, did the district court clearly err? As defense counsel pointed out, the standard is in determining that the gun inevitably would have been discovered. Let me ask you this, counsel. Is it fair to say, from the government's perspective, that but for Bachman's arriving, there would have been no basis for searching the car? I don't think so, Your Honor. And that is really the probable cause argument that was the independent grounds that the government argued below and argues on appeal. Okay, and what you had probable cause, I know there were a lot of things that they could have done, but I'm talking about based upon what had occurred, what Officer Peters saw at that point. What was the probable cause the government had, without Bachman being involved, to search the car? So I think it goes exactly to the nine factors that Your Honor was mentioning during defense counsel's argument. The primary factor, I would say, a number one on the list, was that there was a monkey mask that would cover someone's entire face on the passenger seat of the car that Deputy Peters observed before she even opened, before anyone opened the door. That combined with a lot of other factors. So this is a search that happens in the middle of the night, it's 421 AM, outside of a convenience store that Deputy Peters knows to have been targeted by thefts and robberies in the past. The car that defendant is in has a covered over VIN number that you can't see because of the tape. The defendant gives a name of Glenn Jones that it turns out is actually not his name, but she doesn't know that at the time. But what she does know is that she searches the name Glenn Jones and finds that Glenn Jones has had a robbery arrest in the past. Okay, just to save your time, I'm familiar with the nine factors. What I'm concerned about here is it doesn't seem like Officer Peters did anything about those. Arguably, maybe there was some basis, for example, that he seemed like he said he wasn't on meth, but she kind of thought he was a little unsteady and so on. She could have certainly given him a breathalyzer test or something like that. She could have done a lot, but she didn't. So my question is, does the fact that there are these nine possible bases for her having arrested him qualify without Bachman's involvement to permit a search of the car? Yes, Your Honor, and I don't think that she needs to have arrested him in order to establish probable cause under the automobile exception, which really just requires a fair probability that evidence of a crime will be found in the vehicle. Based on her observations and her thought that, or observations and experience and thought based on those that he was probably on drugs, it would be reasonable for her to search the car for drugs. It would be reasonable for her to search the car for a potential evidence of something that might be used to commit a robbery when he's outside the convenience store in the handicapped space right by the entrance. And is that an objective question, whether or not she had that in her head? It's absolutely an objective question. The parties were actually asked by the district court below to brief the Devin Peck case, which says that it is not a subjective standard of what the officer had in her head, but instead what a reasonable officer in those circumstances would have thought was a fair probability that there might be evidence of a crime in the car. And objectively, what do you think your best crime is for what there was probable cause of here? I would say the first would be a stolen vehicle, actually, because you see a covered over VIN number. She looks up the license plate and finds that it is not registered to Glenn Jones. And then she sees this person who is, has a gang tattoo on his face and a monkey mask on the seat of the car. He doesn't produce an identification in response to her request. When you combine those, I think the most obvious crime from those circumstances would be a stolen vehicle. But I do think contraband or any evidence of a drug crime is also, there was a fair probability of that under these circumstances. How do you deal with wan-less, though, if your crime is a drug crime? So wan-less, decided 30 years ago, I think is, this was a case in which there was evidence of a passenger who had apparently or believed to be on drugs. And this court held that there wasn't probable cause to search two vehicles that were traveling together based on one passenger's potential use of drugs. I don't think these are the same facts. I think this is not a random stop somewhere on the highway. This is a 911 call from the store clerk that results in Deputy Peters doing good police work, actually. She looked. She knocked on the door. She did not draw her gun. She asked this defendant questions, and based on her experience, she observed enough to establish that this was something, there was a fair probability that she would find drugs in this car. Does the district judge's disagreement with her about his manner of speaking undermine that conclusion? I think that that would be, I would not, obviously, now advocate that his supposed rapid speech were part of the analysis. And in fact, it does cut against the probable cause analysis for the drug crime. But the district court didn't dispute the fact that he admitted to having used drugs recently, two to three days ago, which she testified in her experience tends to mean usually two to three hours ago because the defendant won't want to actually tell the truth. The district court did not dispute her testimony that she actually knew that this was an area where drug crimes had been committed. And she had been called to this Circle K based on both robberies and thefts and drug crimes. And the district court did not dispute the twitching and fidgeting movements that she testified about. So I think ultimately, those circumstances in combination as this court has to and as the district court had to view them, and on de novo review. In fact, here, under the Wesby case, the Supreme Court's recent decision, those definitely add up to probable cause. The court has no further questions. I actually think I do have one more question. So let's put aside probable cause for a second and also put aside Guerrero for a second. So if she can make the argument that inevitable discovery is properly before us, then what is your best argument for inevitable discovery? So at this stage, the question would be, did the district court clearly err in finding that Sergeant Bachman would have responded to the scene and didn't know at the time that she had already or was in the process of conducting a search? And the district court did make that as a finding at ER 5. It specifically said in its order, at the point he decided to head to the Circle K, he had not been notified that Peters had conducted a search of defendant's vehicle and found a gun. So the question is, is that clear error? And the best argument I would advance. But I think there are two arguments. So we can assume he didn't know that there was a search. But what about whether they would even still all be there? So the defendant is now pointing to a potential eight minute gap in time. I think that under these circumstances where it was, one, a defendant who had been asleep for two hours, two, a defendant who exhibited signs of drug use, three, a defendant who failed to produce a license, four, a defendant who was parked illegally, all of those circumstances would mean that an officer in Deputy Peters' position would not say, drive away. So it makes perfect sense to believe in these circumstances he would have been there eight minutes later. So basically you want us to assume that under the circumstances, Peters would not have let him go. And that's the reason he would be there when Bachman arrived. I think that's a fair inference. Under these circumstances, she was in the process of still conducting a check. She was investigating whether there was a potential crime here. It is certainly a reasonable, plausible conclusion that shows the district court didn't clearly err. And under that standard, of course, the district court's decision was not illogical, implausible, or unsupported by this record. Other questions? So she spent those eight minutes searching the car while Bachman was traveling to the scene. And the government's suggestion is, if she hadn't been searching the car, she had other things she could have been doing that were reasonable under the circumstances, given the evidence that she had gathered to that point. Is that the government's argument? I would say that's the government's argument. I actually would argue that even if she had been searching the car, but he didn't know that she was searching the car, so that wasn't the reason he responded, that even the vehicle search itself is part of the circumstances that could be calculated in determining whether he would have gotten there in time. Because really the question is, is his arrival at all tainted by the fact that she was searching? So if he didn't know that she was searching, that too would be a perfectly plausible and permissible basis to believe that the car and the driver would have still been there. No, but I'm going a little different direction. I'm trying to figure out, what did she do during those eight minutes? What could she have been doing? If she hadn't been searching the vehicle, she could have continued to question the defendant. She was questioning him. She could have asked him to produce a license and say, you can't actually drive away. She could have told him, if you want to drive this car away within the next eight minutes, you're going to have to have someone come to the Circle K in the middle of the night. Because really, under California law, she would not have said to someone without a license, you're free to go. OK, other questions? Thank you very much, counsel. Your Honors, I want to just address for a minute the phrases that the government was just using. What she could have done, it's a fair inference. It's an assumption. It's a reasonable, plausible conclusion. These are not sufficient. These are just possibilities. Look at Ramirez-Sandoval and Manso-Girado. There has to be more. There has to be a non-speculative showing. Counsel, the government, as I understand it, seems to suggest that given all of the things that are listed in the nine factors, that there's no way that she would have departed. But they also seem to suggest that there was enough probable cause that she could have searched the vehicle, whether or not Bachman was there. Therefore, we wouldn't be dealing with the inevitable discovery doctrine, would we? Your Honor, actually, I think the nine factors are not being presented here as reasons why she could have arrested him. I think that the nine factors the government is putting forth are the government's arguments for why her search, according to the government, was supported by probable cause. And I want to just focus, Your Honors, on Vasey for a minute, the case of Vasey. Let me just ask, if we take that into consideration, the nine factors, and if we conclude that there was probable cause, would that have been enough to permit Peters to search the car, whether or not Bachman arrived? Yes, yes. But I want to focus the inquiry, for Your Honors. The question is not whether there was probable cause that he committed a crime or probable cause to arrest him. Specifically, it was, was there probable cause to believe evidence would be located in the car, which is a different, distinct inquiry. The Rogers case- He mentioned the drug aspect, and that was, I gather, his point. Well, I think that, I think that there was not sufficient cause to think there was evidence of drug use in the car. I want to say, even if there was evidence that Mr. Jones was on the, under the influence of drugs, which actually there wasn't here, even if there were, that wouldn't be tantamount to probable cause to think that evidence of drug use would be inside of the car. That's a different question. If he had been arrested on proper probable cause, though, could the car have been searched? If he had been arrested on probable cause, yes, the car could have been searched. But once again, I think now we're going into a realm of speculation about what Peters would or wouldn't have done. There was no- Well, maybe I misunderstood your answer to Judge Smith, but were you saying you're, it sounded for a second like maybe you were just not disputing that there was probable cause to arrest him. Oh, no. I'm disputing that there was probable cause to arrest him. But that isn't what happened. She didn't arrest him. She simply searched his car. So what I'm saying is if it were true that there were sufficient probable cause to support what she actually did, which was not arrest him, which was search the car, then that would be lawful. But as we argue in the briefs, I don't think that there was. And under Vasey, Your Honors, please take a look at that. This court has said that if the district court makes a finding of incredibility of an officer, which actually was made here, the district court said not only that her specific description of his speech was unreliable, that her entire declaration and testimony was unreliable. And I think that taints her entire statement of what happened and what transpired. She said she saw gang tattoos on his face. There was no foundation for that. There was no explanation of why she thought it was a gang tattoo or her training in identifying gang tattoos at all. Her other statements about what transpired, the district court found those to be unreliable. There's the mask and the covered VIN number and the guy is not the registered owner, all these things. Why is that not enough to suggest the car was stolen and should be searched? To suggest a stolen car? Well, I think we have to look at even assuming there was evidence that there was a stolen car, which I disagree, actually, that the monkey mask would relate to whether the car was stolen or not. But assuming there was evidence that a car was stolen, that wouldn't in itself be enough. There has to be a showing that a probable cause of evidence of that crime of a stolen car would be located in the vehicle. In Rogers, this court talked about that distinction. It said definitely there's probable cause to think that the driver of this car may be pandering the passenger who's much younger than he is. They seem to be providing false IDs. They're in an area that's known for prostitution. This is all, you know, there's probable cause to think that there's a crime happening. But there was not probable cause to think that evidence of that crime would be found inside of the car. And so that's what we're really dealing with here, a very different situation. Other questions? All right. Thank you very much, counsel, to both counsel for your argument. We appreciate it. The case just argued is submitted.
judges: M. Smith, Friedland, Bastian